UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS EUGENE CAMP,

       Petitioner,                                            Case No. 12-12015

v.

                                                    HON. AVERN COHN

MARY BERGHUIS,

       Respondent.

_____/

**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, GRANTING IN PART AND DECLINING IN PART TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN
FORMA PAUPERIS**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Douglas Eugene

Camp (Petitioner) is a state inmate at the Gus Harrison Correctional Facility in Adrian,

Michigan.  Petitioner is serving a sentence of fifty seven to one hundred and eighty

months for Second-Degree Criminal Sexual Conduct (person under 13), Mich. Comp.

Laws § 750.520c(1)(a).  Petitioner, through his counsel, filed a petition for writ of habeas

corpus claiming that he is incarcerated in violation of his constitutional rights. Petitioner

raises claims concerning Double Jeopardy, the Confrontation Clause, and ineffective

assistance of counsel.  Respondent, through the Attorney General's Office, filed a

response, arguing that all of Petitioner's claims are without merit.  For the reasons that

follow, the petition will be denied.  However, the Court will grant a certificate of

appealability on Petitioner's Double Jeopardy claim.

## II. <u>Procedural History</u>

Petitioner was originally charged with several counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct as a result of allegations that he sexually assaulted his twelve-year-old nephew (Complainant) during a weekend camping trip near Lake Hudson, Michigan.

A jury trial commenced and ended during the prosecution's case-in-chief with the judge declaring a mistrial. The prosecutor began proceedings to retry Petitioner. Defense counsel filed a motion to dismiss on double jeopardy grounds, which was denied. Petitioner filed an application for leave to file an interlocutory appeal challenging the trial court's denial of his motion to dismiss, which was denied. <u>People v. Camp</u>, No. 281083, Order (Mich. Ct. App. Nov. 16, 2007); <u>lv. den.</u> 480 Mich. 1022 (Mich. 2008) (unpublished table decision).

Petitioner was retried and the jury found Petitioner guilty of one count of second-degree criminal sexual conduct.

Petitioner filed an appeal of right with the Michigan Court of Appeals, in which he raised, through counsel the same claims presented in this petition.

The Michigan Court of Appeals reversed Petitioner's conviction, finding that Petitioner's second trial, conducted after the trial judge had declared a mistrial at Petitioner's first trial, violated the Double Jeopardy Clause. <u>People v. Camp</u>, No. 285101, 2009 WL 2974772, at *4-6 (Mich. Ct. App. Sep. 17, 2009).

The prosecutor applied for leave of appeal to the Michigan Supreme Court. In lieu of granting leave to appeal, the Michigan Supreme Court vacated the court of appeals' decision and held that the trial court did not violate Petitioner's double jeopardy

2

rights because defense counsel had consented to the mistrial.  People v. Camp, 486 Mich. 914 (Mich. 2010)(unpublished table decision).  The Michigan Supreme Court also remanded the case to the court of appeals to consider Petitioner's remaining claims. Id.

On remand, the Michigan Court of Appeals affirmed Petitioner's conviction on the remaining claims and the Michigan Supreme Court declined to review that decision. People v. Camp, (On Remand) No. 285101, 2010 WL 3238924 (Mich.Ct.App. Aug. 17, 2010); lv. den. 488 Mich. 1040 (Mich. 2011)(unpublished table decision).

Petitioner has now filed a petition for writ of habeas corpus, on the following grounds:

> I. The trial court violated Petitioner's right against double jeopardy and due process under the 5th and 14th Amendments to the US Constitution by declaring a mistrial and retrying the Petitioner after jeopardy had attached.
>
> II. The trial court abused its discretion by preventing defense counsel's cross examination regarding the complainant's credibility and reputation for lying and by striking a witness who interviewed the complainant which violated Petitioner's right of confrontation, presenting a defense, due process, and a fair trial under the 6th and 14th Amendments to the US Constitution.
>
> III. Petitioner was denied his rights to effective assistance of counsel, due process, and a fair trial under the 6th and 14th Amendments to the US Constitution by a series of defense counsel's deficiencies in representation.
>
> IV. The trial court violated Petitioner's rights to due process, a fair trial, presenting a defense, preparing for trial, and discovering exculpatory evidence under the 14th Amendment to the US Constitution by failing to disclose the documents reviewed in camera.

### III.  Facts

The material facts leading to Petitioner's conviction are recited verbatim from the Michigan Court of Appeals' opinion on remand affirming his conviction, which are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See

Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was originally charged with several counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (victim under age 13), and CSC II as a result of allegations that he sexually abused his 12-year-old adopted nephew, AK, during a camping trip in Lenawee County.
>
> Before trial, the prosecutor moved to add Laura Sanders, AK's therapist, as a witness. In response, defense counsel requested Sanders's records related to AK. The trial court remarked that defense counsel would be required to demonstrate a need for the records before the court would conduct an in camera review of the material.
>
> Defendant moved for discovery of AK's educational records, asserting that credibility would be a significant issue in the case, that AK had a significant disciplinary record, that he had been caught stealing and lying at school and had been involved in fights and property damage, that defense counsel could not adequately cross-examine AK about his truthfulness without access to the records, and that access to the records was necessary in order to enable defendant to present a full and fair defense. The prosecutor responded that defendant's request was not specific and should be precluded pursuant to People v. Stanaway, 446 Mich. 643, 521 N.W.2d 557 (1994), or limited to an in camera review, and at any rate would be collateral in nature. The trial court ruled that defense counsel could subpoena the records and that the court would review them in camera.
>
> After jury selection was completed, defense counsel inquired as to whether the trial court had reviewed AK's educational records and if any misconduct was disclosed therein. The trial court replied that it had reviewed the records, and had concluded that if any misconduct was shown in the records it would be inadmissible for purposes of impeachment. The trial court declined to disclose any portion of the records to defense counsel.
>
> On direct examination, the first witness at trial, AK's mother and defendant's sister, discussed the sequence of events that had resulted in the charges against defendant, and then referred to the Livingston County case. Defendant moved for a mistrial or, in the alternative, sought to inform the jury that the Livingston County case had resulted in a complete acquittal. Ultimately, the trial court granted defendant's motion for a mistrial. The trial court denied defendant's

subsequent motion to dismiss the charges based on double jeopardy grounds.

At the second trial, AK testified that he and defendant started engaging in sexual acts soon after they met. AK stated that in July 2006 he and defendant went on a camping trip, and that during the trip defendant committed various sexual acts with him, including anal penetration, fellatio, and mutual masturbation. AK acknowledged that he became upset after he returned home, but that he did not tell his parents what was bothering him. He stated that defendant engaged in no further sexual acts with him after the camping trip.

Defense counsel attempted to cross-examine AK regarding acts of theft or dishonesty at school, in particular an incident regarding a teacher's purse, but the trial court sustained the prosecutor's objection to the questioning. Defense counsel was able to point out some inconsistencies between AK's statement to the police and his trial testimony regarding the sequence of events on the camping trip. The trial court precluded defense counsel from questioning AK regarding AK's false allegation that his parents had beaten him.

Detective Ward of the Lenawee County Sheriff's Department testified he interviewed AK regarding the alleged incidents of sexual activity on the camping trip. Ward acknowledged that AK's statement was inconsistent in some respects with a previous statement AK had given to another police officer.

Dr. Lenna Dev, the medical director of the child protection team at the University of Michigan, performed a physical examination of AK, but found no evidence of sexual abuse. Dr. Dev testified that the lack of physical evidence did not mean that abuse did not occur. She characterized the examination as "inconclusive." Defense counsel sought to cross-examine Dr. Dev regarding an allegation that AK had acted as a "lookout" while another child sexually abused AK's younger sister. Dr. Dev indicated that such an incident would have had no bearing on her findings. The trial court precluded defense counsel from pursuing this line of questioning, finding that it was irrelevant.

Laura Sanders, AK's therapist, provided certain documents to the trial court prior to her testimony, and the court examined some of them in camera. The trial court allowed defense counsel to review the documents it had reviewed, save for one letter. Sanders testified that it was not unusual for a child to fail to disclose sexual abuse while it was taking place. On cross-examination, Sanders indicated that she had learned that AK had been removed from the home of his

biological parents due to physical abuse and neglect. She acknowledged that AK had a history of lying and stealing, and stated that she had been informed that he had stolen a teacher's purse and had lodged a false accusation of physical abuse by his adoptive parents.

Defendant testified that he took AK on the camping trip as a reward for AK doing chores around defendant's house. Defendant denied that sexual activity of any kind took place between him and AK during the trip.

The trial court and the parties agreed, based on AK's testimony regarding the dates on which certain alleged acts occurred, that several counts should be removed from the jury's consideration. Ultimately, the jury considered five counts of CSC I, with CSC II as a lesser included offense on each count. The jury acquitted defendant of four counts of CSC I and convicted him of one count of CSC II. The trial court sentenced defendant to four years, nine months to 15 years' imprisonment.

Defendant moved for a new trial and an evidentiary hearing alleging: (1) he was denied the effective assistance of counsel because counsel failed to initiate an in camera review of AK's records pursuant to Stanaway; failed to investigate the case properly and present a psychological expert witness; erred by agreeing with the prosecution that it was not relevant that AK had acted as a lookout when his sister was sexually abused; and failed to object to Dr. Dev's testimony; (2) he was denied his right to present a full and complete defense and his right to confrontation because he was precluded from inquiring into areas that would support the defense theory that AK's allegations were false; and (3) he was denied a fair trial because the trial court did not comply with Stanaway procedures with respect to AK's school and prior therapy records.

The trial court denied defendant's motion for a new trial and an evidentiary hearing. The court noted that defense counsel succeeded in placing before the jury various allegations of misconduct by AK that could have affected the jury's evaluation of AK's credibility, and concluded that defendant was not denied the rights to present a defense or to a fair trial.

People v. Camp, (On Remand) No. 285101, 2010 WL 3238924, at *1-3 (Mich. Ct.

App. Aug. 17, 2010)(internal footnotes omitted).

## V.  Analysis

### A.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim

that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim–

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F. 3d 322, 326 (6th Cir. 1997).

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362,

412–13 (2000).  A state court's decision is an "unreasonable application of" clearly

established federal law "if the state court identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case." Id. at 413.  A state court decision "based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable

in light of the evidence presented in the state-court proceeding [.]" Miller–El v. Cockrell,

7

537 U.S. 322, 340 (2003)(citations omitted).

The United States Supreme Court held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state courts decision." Harrington v. Richter, 131 S.Ct. 770, 786, (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664, (2004)).  The Supreme Court emphasized, "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, (2003)).  Section 2254(d) does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, but rather, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332 n. 5, (1979) (Stevens, J., concurring in judgment)).

Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington,131 S.Ct. at 786–87.

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e) (1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360–61 (6th Cir.1998).

8

## B.  Double Jeopardy

In his first habeas claim, Petitioner argues that his conviction violates the Double Jeopardy Clause of the federal constitution because the trial court declared a mistrial and retried Petitioner after jeopardy had attached.  Respondent says the claim lacks merit.

As noted above, the Michigan Court of Appeals found that Petitioner did not consent to the mistrial, the mistrial was not supported by manifest necessity, and the retrial violated Petitioner's constitutional double jeopardy protections, thereby reversing the trial court's decision. People v. Camp, No. 285101, 2009 WL 2974772, * 4-6 (Mich.Ct.App. Sep. 17, 2009).

However, the Michigan Supreme Court reversed the Michigan Court of Appeals' decision on the merits, holding that Petitioner consented to the mistrial:

> In lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals because the trial court did not clearly err in finding that the defendant consented to the mistrial declared by the court. Where a defendant consents to a mistrial, double jeopardy considerations do not apply.  United States v. Dinitz, 424 U.S. 600, 607, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976).
>
> People v. Camp, 486 Mich. 1014 (2010)(unpublished table decision).

The Michigan Supreme Court did not explain its reasoning as to why it held Petitioner consented, but, even where a state court's decision is unaccompanied by an explanation, a habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  Harrington v. Richter, 131 S. Ct. at 784.

9

Here, Petitioner may not agree with the Michigan Supreme Court's decision that Petitioner did consent, but mere disagreement with the state court's decision is not sufficient to warrant habeas relief, as explained below.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.  This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977).  A court's decision to declare a mistrial, and subject the defendant to retrial, is "to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." United States v. Wilson, 420 U.S. 332, 344, n. 12 (1975).  A retrial after a declaration of mistrial does not in and of itself prohibit the second trial. Jeffers v. United States, 432 U.S. 137, 152 (1977).  Once jeopardy attaches, prosecution of a defendant other than before the original jury is barred unless "(1) there is a 'manifest necessity' for a mistrial or (2) the defendant either requests or consents to a mistrial." Colvin v. Sheets, 598 F. 3d 242, 252 (6th Cir. 2010)(quoting Johnson v. Karnes, 198 F.3d 589, 594 (6th Cir.1999)(internal quotation marks and citation omitted)).

In reviewing Petitioner's Double Jeopardy claim, the court is mindful that the AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." Harrington v. Richter, 131 S. Ct.

10

at 786.  "If this standard is difficult to meet"—and it is—"that is because it was meant to be." Id.  The Court will not lightly conclude that the State of Michigan's criminal justice system has experienced the "extreme malfunction" for which federal habeas relief is the remedy. Id (internal quotation marks omitted).

The Michigan Court of Appeals, in its original opinion reversing Petitioner's conviction, summarized the trial court record that led to the trial court's decision to declare a mistrial:

> The present case then went to trial before a jury.  The first witness was Tammie Kurth, AK's adopted mother and defendant's sister.  She testified that one evening, a few months after defendant's and AK's camping trip, she discovered AK and SH, in their bedroom, naked from the waist down, "messin' around."  Kurth sent her husband to speak to AK and SH, and AK disclosed that he had learned the behavior from defendant.  Kurth drove to defendant's house, where she "asked him what he'd been doin' to [her] boys."  Defendant denied doing anything improper, but Kurth kept telling defendant "that they [AK and SH] said he had been molesting them."

> Kurth testified that, after reporting the abuse to SH's guardian ad litum, she contacted a lawyer.  The lawyer took her, along with AK and SH, to the local police department.  The prosecutor then asked Kurth, "After a police report had been made, what, if anything, happened?" Kurth replied, "Well, it eventually went to trial in Livingston County. I don't-".

> Defendant immediately requested a bench conference, where the following conversation took place:

> > *Defense Counsel.* I'm [sic] wanna move for a mistrial, or I'm gonna ask you that now that she's opened the door that-

> > *Trial Court.* I think she has opened the door. Do you want the mistrial?

> > *Defense Counsel.* Well, an alternative would be we can announce to the jury and you can let me introduce the not guilty verdict.

> > *Trial Court.* Oh, I think you-I think now you've got a right to do that. I think it's been kicked open.

> The trial court then excused the jury and took a five-minute recess.

When the parties returned to the courtroom, the trial court attempted to learn the precise remedy that defendant was requesting:

*Trial Court.* Mr. Gatesman [defense counsel], What are you asking? You made the objection, and we've taken a recess.  What is it that you want?

*Defense Counsel.* Well, Judge, I think that what is in front of the jury now is a previous jury trial, and I think that the jury should know about the verdict in that trial.

*Trial Court.* What is it you want? Are you asking for a mistrial?  Are you asking for-what?  I don't know. I just want to know what is it you're asking for.

*Defense Counsel.* I would ask that I have a certified copy of the-of the not guilty verdict regarding [SH and AK] in the Livingston County case. I'd ask that be admitted to the-to the jury at the appropriate time, or in the alternative a mistrial if the Court's not inclined to grant that request.

The prosecutor asked the trial court not to grant "that request" because Kurth's answer was nonresponsive, explaining that AK's evaluation at the University of Michigan, rather than the trial in Livingston County, was the event that occurred after the police report was made.  The trial court disagreed: "After you file a report, what, if anything, happened? It came to trial.  Isn't that responsive? It strikes me as being a response." Thus, it found that the prosecutor "created the error."

The trial court still, however, needed to decide the appropriate remedy:

*Trial Court.* I don't know what the appropriate remedy is. I think you have a right to bring out what the results of that trial was, yes.

* * *

*Trial Court.* ... Y'know, when we have the trial in front of 'em, I don't know how we cannot go on there.

* * *

*Trial Court.* ... If you [the prosecutor] can think of another remedy, I can't think of another remedy.  If I grant a mistrial, I'm convinced that the Court of Appeals will say that he's in-he's had jeopardy and you won't be able to try it again.

12

*Prosecutor.* Well, quite frankly, Your Honor, you put a not guilty in front of this jury, I don't how-see how that's gonna be any different.
* * *

*Trial Court.* Let's face it, as I see it, if I grant [defendant's] request [to inform the jury of the not guilty verdict], I agree with you, Ms. Schaedler [the prosecutor], your case is devastated. Is that a fair statement?

*Prosecutor.* I believe so, Your Honor, and I believe that this young man has at least the right, absent any error that the Court found on my part, has the right to have a jury hear this case without prejudice. And we didn't bring in the 40B-404B [evidence] because we wanted to try it clean.

*Trial Court.* Mr. Gatesman, I'll give you your last-last voice on this issue. Anything further you wish to say?

* * *

*Defense Counsel.* Okay. Well, we can't unring that bell. I hate to be trite about this, but we can't. And I think the Constitution mentions the Defendant, y'know, the People may have a statutory right to a jury trial, but the only remedy is for the jury to know what happened in the Livingston County case. That's the only way to clear that up. And I'm asking the Court to-to allow the admission of that verdict as to the complainants in that case, or in the alternative a dismissal of the charge-of all the charges in both cases.

*Trial Court.* Thank you. Well, I agree with you. I don't know how we can unring the bell. These charges are very serious. I think that we should have a clean trial. I'm going to grant a mistrial...

Defendant subsequently moved the trial court to dismiss the charges in the present case based on double jeopardy grounds. He argued that manifest necessity did not require a mistrial, claiming that after the trial court granted his request to inform the jury of his acquittal in the Livingston County case, less drastic remedies, such as a curative instruction, were available to cure any prejudice to the prosecution. In response, the prosecutor claimed that manifest necessity existed because Kurth's testimony, standing alone, deprived defendant of a fair trial. The prosecutor also claimed that introducing evidence of the acquittal "would have compounded the unfairness of the trial by deliberately introducing additional inadmissible evidence." The

prosecutor further argued that defendant consented to the mistrial. He claimed that, at the very least, defendant's final request to introduce the acquittal or dismiss the charges put the trial court in the untenable position of introducing plainly inadmissible evidence or terminating the trial.

The trial court denied the motion to dismiss, explaining:

> Well, my concern in this case is the victims-the victim and society in general that I think is entitled to a trial, a fair trial. Putting this verdict in I think deprived the prosecutor of a fair trial.
>
> Defendant did say, well, I want a mistrial unless we get the verdict in, which I think is a consent to it.
>
> We got in a mess, and I think it-no question I thought then and I think now of manifest necessity that we grant a mistrial at that time.
>
> We can punish the prosecutor for violating a court order through negligence or whatever, but the victim and society have some rights, and I don't think that it's fair to punish the victim, to punish the public as a whole by ... prohibiting a retrial when the circumstances that we were in made it manifestly necessary that we grant a mistrial and in essence was consented to by the Defendant.

People v. Camp, 285101, 2009 WL 2974772, Slip. Op. at * 1-3 (Mich. Ct. App. Sept. 17, 2009); rev'd, 486 Mich. 914 (2010).

Although the question is close, the Michigan Supreme Court's conclusion that Petitioner consented to the mistrial was a reasonable determination of the facts and a reasonable application of the law, so as to preclude habeas relief. On two separate occasions, Petitioner's attorney requested a mistrial and these requests are what the trial court relied on when deciding that Petitioner consented to the mistrial. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed" in the event that a mistrial is possible. United States v. Dinitz, 424 U.S. 600, 609 (1976).

14

Moreover, when the trial court decided to declare a mistrial, Petitioner did not object.  A defendant's failure to object to a mistrial can amount to an implied consent to a mistrial, so that retrial is not barred by double jeopardy, "where the sum of the surrounding circumstances positively indicates this silence was tantamount to consent." See U.S. v. Gantley, 172 F.3d 422, 429 (6th Cir. 1999).  In some situations, simple silence alone can be a positive indication of consent to a mistrial. Id.  In the present case, not only did Petitioner initially request a mistrial, he did not object when the judge decided to declare a mistrial.  Petitioner's failure to object to the trial judge's decision to declare a mistrial came only after his counsel had requested a mistrial and the trial judge had discussed the various alternatives to declaring a mistrial and decided that there was no alternative to ordering a mistrial.  Under the totality of the circumstances, Petitioner's silence, in the face of the judge's decision to order a mistrial, could reasonably be viewed as implied consent for the mistrial. Id.

Because the factual determination of whether Petitioner consented is close, it "militates against the conclusion" that the Michigan Supreme Court's "application of the relevant United States Supreme Court precedent or its determination of the facts was objectively unreasonable." Davis v. Lafler, 658 F. 3d 525, 535 (6th Cir. 2011)(quoting Lopez v. Wilson, 426 F. 3d 339, 358 n. 1 (6th Cir. 2005) (en banc) (Cole, J., concurring) (internal quotation marks omitted).  Therefore, Petitioner has failed to meet the burden for habeas relief on Double Jeopardy grounds.

### C. Confrontation Clause/Right to Present a Defense

Petitioner next claims that he is entitled to habeas relief because the trial court prevented defense counsel's cross examination regarding the Complainant's credibility

15

and reputation for lying and struck a witness who interviewed the Complainant, which violated Petitioner's rights of confrontation and to present a defense.

Petitioner's defense theory at trial was that Complainant was a liar, and had a reputation for same, which is the reason he made false and inconsistent allegations of sexual abuse against Petitioner. Petitioner says that the trial court erred by limiting his cross examination regarding Complainant's credibility through his adoptive mother, father, and grandmother, Dr. Lenna Dev, and Complainant himself. Further, Petitioner alleges his rights were violated when the trial court struck a witness who had performed a forensic interview on Complainant.

The Sixth Amendment Confrontation Clause guarantees the accused the right to cross-examine adverse witnesses to uncover possible biases and expose the witness's motivation in testifying. See Davis v. Alaska, 415 U.S. 308, 315-316 (1974). However, the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant may wish. United States v. Owens, 484 U.S. 554, 559 (1988) (internal citations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiring into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, a witness's safety, or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

16

Further, just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. Washington v. Texas, 388 U.S. 14, 19 (1967); See also Crane v. Kentucky, 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." Crane, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. Id. (quoting Delaware v. Van Arsdall, 475 U.S. at 679). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998)(quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude

17

the evidence was "an objectively unreasonable application of clearly established
Supreme Court precedent."  See Rockwell v. Yukins, 341 F. 3d 507, 511-12 (6th Cir.
2003).

Petitioner first claims that the trial court abused its discretion by refusing to permit
defense counsel to cross examine Complainant and his parents regarding
circumstances and events that resulted in a police report being made as a result of
Complainant allegedly running away from home and falsely telling his neighbors that he
did so because his parents beat him.  The Michigan Court of Appeals held that the trial
court did not abuse its discretion by refusing to allow defense counsel to cross-examine
the Complainant about this incident, because defense counsel sought to introduce
information found in a police report, which amounted to inadmissible hearsay under
M.R.E. 803(8).  The Michigan Court of Appeals further noted that defense counsel
sought to introduce the evidence to attack the Complainant's credibility, which is not a
proper purpose under M.R.E. 404(b).  The trial transcript shows that the trial court
indicated that such testimony was not admissible under state evidentiary rules, and the
Michigan Court of Appeals ruled that the police report was inadmissible hearsay. Mich
R. Evid. 803(8). People v. Camp, (On Remand), 285101, 2010 WL 3238924, Slip. Op.
at * 7.

The Confrontation Clause is not violated by limiting the questioning of witnesses
on the grounds that the evidence is hearsay or irrelevant.  See Takacs v. Engle, 768 F.
2d 122, 125 (6th Cir. 1985).  Likewise, the fundamental right to present a defense is not
absolute; thus, evidence that is deemed insufficiently unreliable, such as hearsay

evidence, is excludable even if it may be relevant to the defense. See McCullough v. Stegall, 17 Fed. Appx. 292, 295 (6th Cir. 2001); see also Allen v. Hawley, 74 Fed. Appx. 457, 462-63 (6th Cir. 2003). The trial judge's decision to preclude defense counsel from questioning the Complainant or other witnesses about hearsay evidence did not violate Petitioner's right to confrontation or to present a defense. The Michigan Court of Appeals was not unreasonable in concluding the same.

Second, Petitioner says that the trial court erred by refusing to allow defense counsel to ask Complainant about alleged incidents of theft or dishonesty at school, as well as a false abuse allegation that he made against his parents, because they were relevant to Complainant's credibility. The Michigan Court of Appeals held that the trial court abused its discretion by preventing defense counsel from cross-examining witnesses on those incidents, pursuant to Michigan law. Camp, (On Remand) 285101, 2010 WL 3238924 at *7. Nevertheless, the Michigan Court of Appeals held that the trial court's error was harmless, because the jury heard about these incidents during the cross-examination of Laura Sanders, Complainant's therapist, therefore, the jury was to able consider this information in light of Complainant's credibility. Id.

Petitioner also complains that the trial court prohibited Petitioner from questioning Complainant's grandmother about Complainant's credibility. Similar to the above analysis, the Michigan Court of Appeals held that the trial court abused its discretion by preventing defense counsel from cross-examining Complainant's grandmother about Complainant's reputation in the family for his lack for truthfulness. Camp, (On Remand) 285101, 2010 WL 3238924 at *7. Nevertheless, the Michigan Court of Appeals found

19

that those errors were not outcome-determinative because the jury had evidence from Laura Sanders from which they could evaluate the Complainant's credibility. Id.

The Michigan Court of Appeals correctly rejected Petitioner's arguments. Granting habeas relief merely because there is a 'reasonable possibility" that trial error contributed to the verdict is at odds with the historic meaning of habeas corpus—to afford relief to those whom society has "grievously wronged." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Even assuming the trial court erred in refusing to allow Petitioner's counsel to question the Complainant or his parents directly about the Complainant's theft or dishonesty at school and his false allegations against his parents or in failing to allow counsel to question the Complainant's grandmother about his reputation for dishonesty, any error was harmless.  Petitioner was not completely barred from presenting testimony concerning the Complainant's history of theft, dishonesty, and false allegations, so as to support his theory that the sexual allegations were false, Petitioner was afforded a meaningful opportunity to present a complete defense. See Fleming v. Metrish, 556 F. 3d 520, 535-36 (6th Cir. 2009).

Finally, Petitioner claims that the trial court denied him the right to confrontation when it granted, over defense counsel's objection, the prosecution's motion to strike Amy Johndro, who performed Complainant's forensic interview.  The Michigan Court of Appeals correctly determined that this did not result in reversible error.  Camp, (On Remand) 285101, 2010 WL 3238924 at *8.  The trial court struck Johndro as a witness approximately three months prior to trial, and defense counsel did not give a reason to subpoena her testimony. Id.  Further, Petitioner had the opportunity to cross-examine

20

Detective Gary Ward regarding his interview techniques, and Petitioner was able to point out inconsistencies in Complainant's statements. Id.

### D. Ineffective Assistance of Counsel

Next, Petitioner claims that habeas relief is warranted because he received ineffective assistance of counsel. Specifically, he says that trial counsel was ineffective in failing to consult and present an expert witness to rebut the State's expert witness, and in failing to object to Dr. Dev's expert testimony during trial.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court's review of counsel's performance must be "highly deferential." Id. at 689.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but

21

whether the determination was unreasonable—a substantially higher threshold."
Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550
U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of
the Strickland standard was unreasonable.  This is different from asking whether
defense counsel's performance fell below Strickland's standard." Harrington v. Richter,
131 S.Ct. at 785.  Indeed, "because the Strickland standard is a general standard, a
state court has even more latitude to reasonably determine that a defendant has no
satisfied that standard."  Knowles, 556 U.S. at 123 (citing Yarbrough v. Alvarado, 541
U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review"
applies to a Strickland claim brought by a habeas petitioner. Id.  This means that on
habeas review of a state court conviction, "a state court must be granted a deference
and latitude that are not in operation when the case involves review under the Strickland
standard itself."  Harrington, 131 S.Ct. at 785.  "Surmounting Strickland's high bar is
never an easy task."  Id.  at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485
(2010)).

       Finally, the Court is aware that "reliance on 'the harsh light of hindsight' to cast
doubt on a trial that took place" five years ago" is precisely what Strickland and AEDPA
seek to prevent."  Harrington v. Richter, 131 S. Ct. at 789.  With this standard in mind,
the Court turns to Petitioner's allegations of ineffectivness.

       First, Petitioner says that trial counsel was ineffective for failing to call a
psychological expert witness to undermine the testimony of Laura Sanders, the
prosecutor's expert witness.  Petitioner says that defense counsel should have called
Jeffery Kieliszewski, PhD. to criticize Sander's methods.  Further, Petitioner insists that

Dr. Kieliszewski could have used examples of Complainant's previous troubled behavior to undermine Complainant's allegations against Petitioner. Dr. Kieliszewski planned on testifying about Sander's interpretation of Complainant's allegations and Complainant's past behavior. (Pet. At 83-84). As the Michigan Court of Appeals noted in rejecting Petitioner's claim, defense counsel attacked Complainant's credibility when cross-examining Sanders, two police officers, and Complainant's family members. Further, defense counsel drew attention to Complainant's inconsistent statements while cross-examining Complainant. See People v. Camp, (On Remand) 285101, 2010 WL 3238924 at *4.

Defense counsel's strategy to cross-examine the prosecution's expert witness, rather than calling his own expert, was within the realm of reasonable trial strategy. See Tinsley v. Million, 399 F.3d. 796, 806 (6th Cir. 2005); see also Stevens v. U.S., 298 F. Supp. 2d 657, 660-61 (E.D. Mich. 2004). The Michigan Court of Appeals explained that "even if Kieliszewski had testified, the jury would have been entitled to believe the testimony given by Sanders and [Complainant], and to find to find that [Petitioner] abused [Complainant]. " Camp, (On Remand) 285101, 2010 WL 3238924 at *4.

In light of thee facts, defense counsel's decision not to call Dr. Kieliszewski was reasonable, thus, counsel was not ineffective.

Finally, Petitioner says that defense counsel rendered ineffective assistance by failing to object to Dr. Dev's medical testimony. Dr. Dev testified that she did not find any signs of sexual abuse when she examined Complainant; however, this did not imply that sexual abuse did not occur. Furthermore, Dr. Dev testified that this that type of situation was common (no physical evidence of abuse). Defense counsel's decision to

23

not object in this situation was sound strategy because Dr. Dev's testimony that she found no evidence of physical abuse made the existence of sexual abuse less probable. This testimony actually bolstered Petitioner's defense (that he did not abuse the Complainant).  Furthermore, under Michigan law, the testimony was relevant and admissible, Mich. R. Evid. 401 and 402; People v. Camp, (On Remand) 285101, 2010 WL 3238924 at *4-5.  Therefore, defense counsel was not required to raise meritless objections. Harris v. United States, 204 F.3d 681, 683 (6th Cir. 2000).

Furthermore, defense counsel did not object when, in response to the prosecutor's question about the "presumed last assault," Dr. Dev remarked that she did not know when the Complainant's "last contact" with defendant occurred.   The Michigan Court of Appeals correctly ruled, "We find that in all likelihood defense counsel made a strategic decision not to object and call further attention to this remark. We will not second-guess counsel in matters of trial strategy." Camp, (On Remand), 285101, 2010 WL 3238924, * 5.   In the present case, counsel may very well have made a strategic decision not to object to this testimony, so as to avoid bringing undue attention to the evidence.  See Cobb v. Perini, 832 F.2d 342, 347-48 (6th Cir. 1987).  "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint[,]."United States v. Caver, 470 F.3d 220, 244 (6th Cir. 2006).

Here, the record does not show that defense counsel performed deficiently, nor was the court of appeals unreasonable in concluding the same.  Thus, Petitioner is not entitled to relief on his claim of ineffective assistance of counsel.

### E.  In Camera Review

24

Lastly, Petitioner says that the trial court violated his right to present a defense and his due process rights by denying him access to documents that the court reviewed in camera. The trial court reviewed documents from Laura Sanders's report and education records from Complainant's school. The trial court denied Petitioner's request to review the documents on the grounds that the documents were not useful to the defense. Petitioner argues that Complainant's school records and records from his therapist would have "contained information about [Complainant's] behavior that was directly probative of his truthfulness." (Pet. At 97). As discussed above, Complainant's prior bad acts at school and his inconsistent statements regarding his claims of abuse were heard by the jury when defense counsel cross-examined the Complainant, Complainant's family members, and his therapist. Moreover, Petitioner fails to demonstrate that the documents reviewed by the trial judge in camera would have benefitted Petitioner's defense.

There is no clearly established federal law that requires that a defendant be permitted to use confidential, privileged information to impeach a witness. In Pennsylvania v. Ritchie, 480 U.S. 39, 53–54 (1987), a plurality of the Supreme Court ruled that a defendant's right of cross-examination was not violated when a child protective service agency refused to turn over its confidential records to him, on the ground that the records were privileged under state law. Id. at 43–46. In so ruling, the Supreme Court stated, "[t]he ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. at 53.

25

In Middlebrooks v. Bell, 619 F. 3d 526, 541–43 (6th Cir. 2010); cert. granted, judgment vacated on other grounds, 132 S. Ct. 791 (2012), the Sixth Circuit refused to find a Confrontation Clause violation involving a claim almost identical to the one brought by Petitioner.  In Middlebrooks, the trial court denied the petitioner's request to examine a witness' psychiatric hospital records for impeachment purposes, as well as his request to conduct an in camera inspection of those records. Id. at 541.  The petitioner was given a full opportunity to cross-examine the witness, and was permitted to ask the witness about the hospital records in question. Id. at 542.  The Sixth Circuit held, "[i]t is clear ... that for now there is no clearly established federal law indicating that the trial court's failure to order disclosure of [the witness'] hospital records violated [the defendant's] confrontation rights." Id. at 542–43.  The Sixth Circuit further emphasized that the defendant's trial counsel "received wide latitude to question" the witness. Id. at 543.

Here, unlike the trial court in Middlebrooks, the trial court agreed to review Laura Sanders' report and the Complainant's education records and determined that they did not contain any exculpatory information.  In the absence of any clearly established federal law that requires that a criminal defendant be able to use privileged, confidential information to impeach a witness, the trial judge's refusal to turn this confidential information over to Petitioner did not amount to a violation of his right to confrontation, so as to entitle him to habeas relief.  Moreover, in light of the fact that Petitioner was able to elicit testimony from the witnesses concerning the Complainant's history of thefts, dishonesty, and prior false allegations against his parents, Petitioner was afforded an adequate opportunity to impeach the witnesses' credibility.

26

## IV.  Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is
DENIED.

Under 28 U.S.C. § 2253(c) (2), the Court must determine whether a certificate of
appealability should be granted. [1]   A certificate should issue if Petitioner has
demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. §
2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that
reasonable jurists would find the district court's assessment of the constitutional claims
debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000).

Although the Court believes that its decision to deny habeas relief was correct,
the Court will nonetheless grant Petitioner a certificate of appealability on his first claim
that his retrial following the declaration of a mistrial violated his Double Jeopardy rights.
The Michigan Court of Appeals reversed Petitioner's conviction, finding that Petitioner
had not consented to the mistrial.  The Michigan Supreme Court subsequently reversed
the Michigan Court of Appeals, holding that Petitioner had consented to the mistrial.  In
light of the fact that the Michigan Court of Appeals found that Petitioner's retrial
following the declaration of a mistrial violated the Double Jeopardy Clause, Petitioner
has shown that jurists of reason could decide Petitioner's first claim differently or that
the issue deserves encouragement to proceed further.  See Robinson v. Stegall, 157 F.

---

[1]"The district court must issue or deny a certificate of appealability when it enters
a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28
U.S.C. foll. § 2254.

Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001).  Accordingly, the Court will grant

Petitioner a certificate of appealability with respect to his first claim.

Petitioner is not, however, entitled to a certificate of appealability with respect to

his remaining claims, because jurists of reason would not debate the Court's

assessment of these claims, nor conclude that the issues deserve encouragement to

proceed further.

Finally, if Petitioner chooses to appeal the Court's decision, he may proceed in

forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. §

1915(a)(3).

SO ORDERED.

 s/Avern Cohn
UNITED STATES DISTRICT JUDGE


Dated:  December 13, 2013


I hereby certify that a copy of the foregoing document was mailed to the
attorneys of record on this date, December 13, 2013, by electronic and/or ordinary mail.


 s/Carol Bethel for Sakne Chami
Case Manager, (313) 234-5160